UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

INGO STUBBE, M.D., Ph.D., FACC

Plaintiff

v.

ROBERT L. WILKIE,
SECRETARY OF VETERANS AFFAIRS,
UNITED STATES DEPARTMENT OF
VETERANS AFFAIRS,

Defendant

Civil Action No. ______________

# COMPLAINT AND DEMAND FOR JURY TRIAL

## Introduction

1. This is a civil action brought by Ingo Stubbe, M.D., Ph.D., FACC ("Dr. Stubbe"), formerly a primary care/internal medicine physician at the Brockton VA Medical Center in Brockton, Massachusetts, which is part of the VA Boston Healthcare System ("VA BHCS"). Dr. Stubbe seeks redress for age discrimination, disability discrimination, creation of a hostile work environment, retaliation and other wrongful acts perpetrated against him by the defendant, Robert L. Wilkie, Secretary of Veterans Affairs, United States Department of Veterans Affairs ("VA") during and after Dr. Stubbe's employment by the VA, culminating in Dr. Stubbe's retaliatory and otherwise unlawful constructive termination and the VA's retaliatory reporting of Dr. Stubbe to the Massachusetts Board of Registration in Medicine ("BORIM").

2. Dr. Stubbe seeks compensatory and punitive damages, costs, statutory interest and reasonable attorneys' fees.

**Jurisdiction and Venue**

3. This Court has jurisdiction over the subject matter of this civil action pursuant to the Age Discrimination in Employment Act (ADEA), 29 USC § 621, et seq., the Rehabilitation Act of 1973, as amended, 29 U.S.C. 706; 791 et seq.; the Americans With Disabilities Act, as amended, 42 USC §12101, et seq., as well as under Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, Section 701 et seq., 42 U.S.C. 2000e et seq. Jurisdiction is also based upon the fact that an agency of the U.S. Government is a defendant in this matter.

4. Venue in this district is appropriate pursuant to 28 U.S.C. § 1391, because it is where a substantial part of the relevant events giving rise to the claim occurred. Plaintiff is a Massachusetts resident and was employed at all relevant times by the VA at its Brockton, Massachusetts Medical Center ("the Brockton Campus").

**Parties**

5. Plaintiff Ingo Stubbe, M.D., Ph.D., FACC, is a natural person, currently 75 years of age, who resides in Wellesley, Norfolk County, Massachusetts. He was employed by Defendant VA as a primary care/internal medicine physician for the VA Boston Healthcare System ("VA BHCS") from on or about 1997 until 2000, and subsequently from on or about February 5, 2007 until his retaliatory and unlawful constructive termination on October 19, 2016.

6. Defendant Robert L. Wilkie is the Secretary of Veterans Affairs for the United States Department of Veterans Affairs. He is the government official responsible for the Department of Veterans Affairs. He is sued in his official capacity. The United States Department of Veterans Affairs has a primary business address of 810 Vermont Avenue, NW, Washington, D.C., and

employed Dr. Stubbe to work at the VA BHCS. The VA BHCS is a group of VA medical facilities located primarily in Jamaica Plain, Suffolk County, Massachusetts; in West Roxbury, Suffolk County, Massachusetts; and in Brockton, Plymouth County, Massachusetts. The main administrative offices of the VA BHCS are located in West Roxbury, Suffolk County, Massachusetts.

**Exhaustion of Administrative Remedies**

7. Dr. Stubbe initiated an administrative EEO complaint of employment discrimination, creation of a hostile work environment and retaliation against the VA on June 21, 2017.

8. On or about January 24, 2018, Dr. Stubbe filed his formal Complaint of Employment Discrimination with the VA's Office of Resolution Management. An Amendment to this Complaint was filed on or about March 6, 2018.

9. On or about July 21, 2020, the VA issued its Final Agency Decision and stated that Dr. Stubbe could file a civil action within 90 days of receipt of the Final Agency Decision, and that for timeliness purposes, it is presumed that the parties received the Final Agency Decision within 5 calendar days after July 21, 2020.

10. The instant civil action is timely filed in this Court within 90 days of the receipt of the Final Agency Decision.

**Statement of Facts**

Prior to Being Hired by the Department of Veterans Affairs
Dr. Stubbe Enjoyed a Successful Career in Internal Medicine

11. Dr. Stubbe has a wealth of experience in internal medicine and in cardiology. He received his M.D. degree in 1971 from Karolinska Institute School of Medicine in Stockholm, Sweden, and in 1982, he received his Ph.D. from the University of Lund in Lund, Sweden. He has practiced in the field of internal medicine for approximately 49 years.

12. Dr. Stubbe held internships at hospitals in Sweden from 1967 through 1971 in the fields of pulmonary medicine, general surgery, ob/gyn, internal medicine and psychiatry. He held residencies in internal medicine at hospitals in Sweden from 1972 through 1975, and from 1975 through 1978, he held an internship in cardiology at University Hospital in Lund, Sweden. From 1992 through 1994, he was a cardiology research fellow at Deaconess Hospital (BIDMC) in Boston, Massachusetts, and from 1997 to 1998 he was a resident in internal medicine at Boston University.

13. Since 1971, Dr. Stubbe has held a Swedish Medical License. In 1976 he received a Swedish Board Certification in Internal Medicine, and in 1977 he received a Swedish Board Certification in Cardiology. In 1996, Dr. Stubbe received Medical Licensure from the United Arab Emirates.

14. Dr. Stubbe received his Massachusetts Medical License in 1994, and he became Board Certified by the American Board of Certification in Internal Medicine in 1998. In 1992 he was elected a Fellow of the American College of Cardiology ("FACC").

15. During his medical career Dr. Stubbe has held various academic appointments, including as an Instructor for many years at the Harvard Medical School, and in 1981 Dr. Stubbe was a Visiting Scholar in the Cardiology Division at the Stanford University Medical Center. Over the course of his career, he has worked at various hospitals, including working abroad in Sweden, Saudi Arabia, Qatar, and the United Arab Emirates. He is a published author of numerous medical journal articles regarding research he has conducted.

VA BHCS Hired Dr. Stubbe as a Staff Physician in Primary Care/Internal Medicine

16. Dr. Stubbe was a primary care physician for the VA BHCS from on or about July 1, 1997 to August 30, 2000. Dr. Stubbe worked in Boston for the VA and also in the VA's

Community Based Outpatient Clinic in Framingham, Massachusetts. Dr. Stubbe resigned from this position in order accept a professional position at the Cambridge Health Alliance.

17. After working at the Cambridge Health Alliance, Dr. Stubbe was hired by the VA again, to commence work as a staff physician in primary care/internal medicine at the VA's Brockton Campus on or about February 5, 2007.

Dr. Stubbe's Performance as A Physician for the VA

18. Throughout his employment at the VA, Dr. Stubbe performed his duties in a satisfactory or above satisfactory manner.

19. Dr. Stubbe regularly received salary increases for good performance, both prior to and including 2013, 2014, 2015, and he received a performance pay increase effective March 6, 2016. There were years when he also received more than one pay increase in a calendar year.

20. With one exception, addressed below, all of Dr. Stubbe's Proficiency Reports spanning his years of employment at the Brockton Campus show ratings from Satisfactory, which means "Fully met and sometimes exceeded expectations" to High Satisfactory, which means "Usually exceeded reasonable expectations by a substantial margin".

21. The one exception was a Proficiency Report belatedly written on November 9, 2016, by his supervisor, Dr. Michelle Morreale-Karl, after Dr. Stubbe's constructive termination on October 19, 2016 and which Dr. Stubbe never had an opportunity to see, sign or dispute. Dr. Stubbe disputes that Proficiency Report and avers that it was made in furtherance of the VA's discrimination and retaliation against him.

22. In his many other Proficiency Reports, Dr. Stubbe was regularly noted to have excellent clinical competence, which the VA defined as "Includes examination, diagnosis, therapeutic-ability, effectiveness in emergencies, patient management, consultations, specialty

skills and record keeping"; he was also regularly noted to be a dedicated physician with an excellent rapport with his patients and in particular with Vietnam era veterans; and he was further noted to manage the largest panel of patients in the Brockton Campus primary care practice.

The VA's Unlawful Discrimination and Retaliation Against Dr. Stubbe

23. From having approximately 1100 patients earlier in his employment at the VA, by the time of his constructive termination on October 19, 2016, Dr. Stubbe had been assigned approximately 1300 patients.

24. Many of Dr. Stubbe's patients were elderly, had complex and multiple problems, such as dementia, drug problems, PTSD, and a variety of medical problems.

25. By the time of his constructive termination, Dr. Stubbe had also been assigned the largest number of chronic opiate patients that any Brockton Campus physician had. These patients had complex medical histories and needs, and caring for them took a significant amount of time. These patients had complex pain management issues including chronic opiate renewals. Many of these patients were very difficult to deal with.

26. Dr. Stubbe was out of work for medical reasons from on or about April 21, 2016 to on or about July 7, 2016. He passed out, fell and suffered a head injury at his home and also fractured his hip, which required orthopedic surgery and convalescence. He also required neurosurgery for his back and convalescence from that as well. His disabilities were syncope, subdural hematoma, hip fracture, and back injury/spinal stenosis. The syncope may recur at any time, and his hip and back problems took more than 6 months to resolve and continue to have significant, residual negative impacts on his life.

27. During the time that Dr. Stubbe was at the VA, his everyday life activities were negatively and substantially limited by these disabilities.

28. When Dr. Stubbe returned to work at the VA in July 2016, he was supposed to start out on a part-time basis; however the quantity of the work he was assigned meant he had to work many more hours than part-time.

29. Dr. Stubbe asked the VA to extend the amount of time he was supposed to be working part-time, rather than coming back to work full-time, but the VA instead required him to resume full-time work before he was physically ready to do so.

30. When resuming full-time work (as well as prior to then), Dr. Stubbe was required, due to his own medical condition, to go to doctor's appointments for himself as well as to physical therapy.

31. When he came back to work and through the time of his constructive termination, Dr. Stubbe visibly walked with great difficulty, limped and walked with a walker and then a cane. His lack of mobility severely impacted his ability to perform his job. He also had difficulties sitting for a long time. He could not use stairs, he was limited in the amount of weight he could carry, and everything took longer for him to do. He also had pain.

32. After Dr. Stubbe came back from medical leave, his Licensed Practical Nurse (LPN) told him to "watch your back", or words to that effect.

33. Dr. Stubbe's disabilities and need for reasonable accommodation was obvious to the VA.

34. Upon coming back to work, Dr. Stubbe asked his first and second line supervisors, Dr. Michele Morreale-Karl, Director of Primary Care, and Dr. Sunil Verma, Medical Director, Brockton Primary Care Service, to accommodate his disabilities by reducing

his case load; however Dr. Morreale-Karl and Dr. Verma refused to accommodate him and instead assigned Dr. Stubbe an even heavier patient load.

35. Other primary care physicians and staff noticed that management overloaded Dr. Stubbe with patients after he came back from his medical leave.

36. Dr. Stubbe discussed a number of his patient cases with a pain specialist who told him it was obvious that he had too many patients overall and too many pain patients.

37. In addition, Dr. Morreale-Karl and Dr. Verma refused to assign Dr. Stubbe a full-time Registered Nurse ("RN") to assist him, although Dr. Stubbe had made this request, and he was the only internal medicine physician on the Brockton Campus who had no full-time RN assigned to him. Moreover, there was a newly hired Nurse Practitioner ("NP") who had no patient load but who Dr. Verma refused to assign to Dr. Stubbe despite Dr. Stubbe requesting this from Dr. Verma. In denying Dr. Stubbe's request, Dr. Verma's demeanor showed that he took pleasure in denying Dr. Stubbe's request.

38. Not having a full-time RN or the assistance of an NP meant that in addition to providing medical care, Dr. Stubbe had to make time-consuming phone calls to patients and other departments that would otherwise have been performed by a full-time RN or NP and that could not be performed by a LPN.

39. A further accommodation requested by Dr. Stubbe to the VA was to allow him to leave the VA during usual VA work hours in order to keep his own medical appointments and physical therapy appointments, but Dr. Morreale-Karl and Dr. Verma denied him the opportunity to do so.

40. They also imposed strict sign in and sign out requirements on Dr. Stubbe, where he was required to email his arrival time each morning to Dr. Morreale-Karl and email his

departure time each evening to Dr. Morreale-Karl, to prevent him from making appointments for his own medical care during VA work hours.

41. Dr. Stubbe's Proficiency Reports as well as other VA documents listed Dr. Stubbe's date of birth. Dr. Stubbe's Proficiency Reports also noted his "over 40 years of clinical practice experience." In addition, Dr. Stubbe's physical appearance is that of an older man.

42. From July 2016 and continuing increasingly until his constructive termination, Dr. Morreale-Karl and Dr. Verma said to Dr. Stubbe words to the effect of "You are getting old. You should retire." These comments were humiliating, demeaning and upsetting to Dr. Stubbe.

43. From July 2016 and continuing increasingly until his constructive termination, Dr. Morreale-Karl also often made statements to Dr. Stubbe that impugned his memory, by prefacing her comments with "Did you forget that . . . ", and "Did you remember that . . . " These comments were humiliating, demeaning and upsetting to Dr. Stubbe. Dr. Stubbe did not have a memory problem.

44. Dr. Stubbe let Dr. Morreale-Karl and Dr. Verma know that he objected to their refusals to accommodate his disabilities and instead assign him increasing numbers of patients, not provide him with a full-time RN, and not allow him to go to his medical appointments and physical therapy appointments during VA work hours.

45. Once he returned to work in July 2016, neither Dr. Morreale-Karl nor Dr. Verma nor anyone else at the VA asked Dr. Stubbe to provide medical documentation regarding his medical condition.

46. After denying Dr. Stubbe's requests for accommodations, neither Dr. Morreale-Karl nor Dr. Verma nor anyone else at the VA engaged in any interactive process with Dr.

Stubbe to determine whether there was any accommodation that could be made for his disabilities.

47. Dr. Stubbe's noticeable difficulty walking adversely affected his ability to care for his overload of patients, including his overload of difficult, opioid patients, that Dr. Morreale-Karl and Dr. Verma assigned to him.

48. As a result of discrimination and/or retaliation/reprisal, from his return to work in July 2016 to the date of his constructive termination, Dr. Stubbe was assigned a more excessive and heavier patient case load than significantly younger and non-disabled internal medicine physicians were assigned at the VA BHCS Brockton Campus.

49. Particularly given his disabilities, Dr. Stubbe's excessive patient case load was very stressful to him and required him to spend considerably more time at work than significantly younger, non-disabled physicians spent at work. He had so many patients that he rarely was able to eat lunch, and he did not have sufficient time during the work day to finish his patient notes and would regularly have to work many extra hours including coming in early in the morning before usual work hours and also coming in at nights and on weekends.

50. After his return from medical leave, Dr. Stubbe was subjected to unjustified, excessive scrutiny and supervision of his work and constant, unjustified criticism by Dr. Morreale-Karl and Dr. Verma.

51. Dr. Morreale-Karl would show up at any time unannounced and without any appointment to see Dr. Stubbe, even if Dr. Stubbe had patients scheduled, to talk about semantics of medical notes and harass him.

52. During his employment at the VA, Dr. Stubbe's patient notes were regularly subjected to a peer review process, and those notes met the standard of care.

53. Dr. Stubbe is not a typist. He asked Dr. Morreale-Karl for a Dragon voice recognition system to use for writing patient notes. Dr. Stubbe did not get the Dragon system until approximately Spring 2016 (and he was out on medical leave for most of the Spring of 2016). A significantly younger, able-bodied physician in the Department was given a Dragon system much earlier.

54. After Dr. Stubbe's constructive termination, he was told by a VA staff member that Dr. Verma was supposed to take on Dr. Stubbe's chronic opiate patients; however Dr. Verma said that the number of patients Dr. Stubbe had was way too many for one person to handle and that no single person could handle so many pain patients. On information and belief, Dr. Verma spread those patients out to other doctors.

55. From the time of his return to work after his medical leave until the date of his constructive termination, Dr. Stubbe's working environment at the VA became unbearable due to the actions of the VA in, among other things, not accommodating his disabilities, and instead assigning him an increasing patient load including very difficult opiate patients; in not providing him with a full-time RN or NP; in not allowing him to take time off in order to attend his own doctor and physical therapy appointments; in subjecting him to unjustified, increasing scrutiny and unjustified, increasing criticism of his record keeping; in subjecting him to derogatory comments about his age and suggestions that he retire; in subjecting him to derogatory comments about his memory; and in making it impossible for him to do the overload of work assigned to him unless he expended substantial hours of additional time, beyond usual work hours, to deal with record keeping during early mornings, his lunchtimes, evenings and weekends, and all this was happening as he was trying to recover from a head injury, orthopedic surgery on his hip and neurosurgery on his back.

56. In October 2016, Dr. Morreale-Karl made it clear that the unbearable working environment described herein would continue.

57. Dr. Morreale-Karl also threatened Dr. Stubbe that the VA could report Dr. Stubbe to the state licensing board, unless Dr. Stubbe retired, in which case, she assured Dr. Stubbe that the VA would not pursue any action against him.

58. Dr. Heather Davidson, who was Dr. Morreale-Karl's supervisor, also suggested to Dr. Stubbe that he should retire, as other physicians in similar circumstances had done and thereby avoid the VA pursuing any medical board action against him.

59. As a result of all the foregoing, Dr. Stubbe retired on October 19, 2016; however that retirement was a forced retirement and a constructive termination.

60. Since his constructive termination in October 2016 and continuing after that date, Dr. Stubbe's patient notes and practice of medicine were, as a result of discrimination and/or retaliation/reprisal, excessively and unjustifiably scrutinized and criticized by Dr. Morreale-Karl and Dr. Verma and others acting at the direction of management.

61. After Dr. Stubbe was constructively discharged from the VA, he accepted full-time employment as a physician in the private sector, which employment continues to date. His employers and patients have been very satisfied with his clinical care.

62. By letter from Mr. Vincent Ng, Medical Center Director, VA BHCS, dated May 8, 2017 ("Mr. Ng's letter"), which was almost 7 months after Dr. Stubbe's constructive termination and Dr. Morreale-Karl's and Dr. Davidson's assurances that the VA would not take any adverse action to report Dr. Stubbe if he resigned from the VA, Dr. Stubbe was informed that he "may have" so significantly failed to meet generally-accepted standards of clinical practice with respect to his care of 14 patients (later revised by the VA to 12 patients) as to raise

reasonable concern for the safety of patients that may need to be reported by the VA to a state medical licensing board.

63. Dr. Stubbe was shocked by and suffered extreme emotional distress from receipt of Mr. Ng's letter.

64. None of the patients who were referred to in Mr. Ng's letter had suffered any harm from Dr. Stubbe's care, and the VA did not and could not allege that any of Dr. Stubbe's patients were actually harmed by Dr. Stubbe's practice of medicine.

65. Mr. Ng's letter made false allegations about Dr. Stubbe's medical care of patients.

66. There was no legitimate reason for the VA to allege that Dr. Stubbe's job performance at the VA raised reasonable concern for patient safety.

67. "Evidence" of alleged substandard patient care provided by the VA in Mr. Ng's letter, did not provide any patient names, included very incomplete patient records, included some patient records from the 2014 time frame covered by the 10/1/13-9/30/14 Proficiency Report in which Dr. Stubbe had been rated as "High Satisfactory" in "Clinical Competence"; failed to provide dates of alleged concerning behavior; and failed to provide specifics as to the allegations of the concerning behavior.

68. Dr. Stubbe obtained counsel and through counsel disputed Mr. Ng's allegations and objected to the VA not providing adequate information to Dr. Stubbe so that he could fully defend himself against the allegations. For example, the VA never provided Dr. Stubbe with the full medical records of the 12 patients for whose care Dr. Stubbe was criticized.

69. Dr. Stubbe's counsel had to make FOIA requests to obtain additional information regarding these 12 patients so that Dr. Stubbe's care of these patients could be assessed in context and not as isolated and incomplete bits of information. Although some additional

information was provided through the FOIA requests, the VA has continued to withhold approximately 7912 pages of documents, including missing patient notes, missing patient medication lists/medication history, missing diagnostic test results, missing notes of patient phone calls, missing lab reports, and missing reports of other providers who were treating the same patients.

70. The VA's refusal to provide Dr. Stubbe with adequate information so that he could defend himself against the allegations against him constitutes further retaliation against Dr. Stubbe by the VA.

71. Since his constructive termination in October 2016 and continuing to on or about January 25, 2018, as a result of retaliation/reprisal by Dr. Morreale-Karl, Dr. Sunil Verma, Mr. Ng and others in the VA, Dr. Stubbe's work at the VA was subjected to excessive and unjustified scrutiny and subjected to higher performance standards than were required of other physicians, and Dr. Stubbe was subjected to ongoing threats of being reported to a state medical licensing board.

72. Those threats of reporting Dr. Stubbe to a state licensing board were realized when Mr. Ng reported Dr. Stubbe to the Massachusetts Board of Registration in Medicine by letter dated January 25, 2018 ("Mr. Ng's Reporting Letter").

73. On June 21, 2017, Dr. Stubbe contacted the VA's Office of Resolution Management ("ORM") to initiate an EEO complaint of discrimination, hostile work environment and retaliation.

74. During the Fall of 2017, starting in September 2017, the ORM was in contact with the VA, including Dr. Morreale-Karl and Dr. Verma, about Dr. Stubbe's allegations and Dr.

Stubbe's willingness to go to mediation regarding his complaint. The VA took an extended amount of time to agree to schedule a mediation, which ultimately did not occur.

75. On or about January 12, 2018, Dr. Stubbe was notified by the ORM of his right to file a formal EEO Complaint.

76. On January 24, 2018, Dr. Stubbe filed his formal Complaint of Employment Discrimination with the ORM via email.

77. By letter dated January 25, 2018, Mr. Ng reported Dr. Stubbe to the Massachusetts Board of Registration in Medicine ("BORIM"), claiming that Dr. Stubbe's practice of medicine failed to meet generally accepted standards of clinical practice, so as to raise reasonable concern for the safety of patients.

78. Dr. Stubbe alleges that there was no legitimate basis for reporting him to the BORIM and this action was discriminatory against him on the basis of age and/or disability and/or that this action was retaliatory, in reprisal for his prior and pending participation in the EEO process and filing of his EEO Complaint.

79. On information and belief, significantly younger and/or able-bodied physicians at VA BHCS were not subjected to being reported to state medical licensing boards when their notes that were peer reviewed were deemed to have met the standard of care.

80. On information and belief, significantly younger and/or able-bodied physicians at VA BHCS were not subjected to having all their records gone through after they left the employ of the VA.

81. On information and belief, other older physicians at VA BHCS were put under excessive scrutiny by Dr. Morreale-Karl and/or Dr. Verma in an attempt to get those physicians to resign or be fired in order to replace them with younger physicians or nurse practitioners.

82. On information and belief, the VA has had a practice of getting rid of physicians who are over 60 years of age, and plaintiff was subjected to this practice.

83. While Mr. Ng's Reporting Letter criticized Dr. Stubbe's "prescribing patterns of narcotics and benzodiazepines", neither Dr. Stubbe nor any other primary care physician at the Brockton Campus had been provided by the VA with any written guidelines or standard of care concerning the prescribing of opioids and benzodiazepines up to the time Dr. Stubbe's employment with the VA was constructively terminated.

84. Mr. Ng's Reporting Letter criticized Dr. Stubbe's "prescribing patterns" without providing specifics.

85. The matter of prescribing these medications has been evolving, with different views advanced over time.

86. The VA's practice while Dr. Stubbe worked for VA BHCS was to allow physicians discretion and leeway in prescribing narcotics. Some physicians were more lenient, and some were stricter. A significantly younger, able-bodied internal medicine physician who had lenient practices in prescribing narcotics, at the same time as Dr. Stubbe was working for VA BHCS, did not have his patient records excessively scrutinized, did not have his narcotics prescribing practices criticized, and was not reported to a state licensing board.

87. It has come to light after Dr. Stubbe's constructive termination that Purdue Pharma mislead veterans and the VA (and other government entities and programs) until 2018 about the dangerousness of prescribing these pain relievers. While Dr. Stubbe was employed at the VA, the VA told physicians to switch from prescribing short-acting opioids to prescribing long-acting opioids, and claimed the long-acting opioids were safer and less addictive. This has

turned out to be untrue and based on Purdue Pharma's false and misleading statements and predatory marketing practices.

88. Mr. Ng's Reporting Letter made additional, unjustified and false criticisms against Dr. Stubbe.

89. Dr. Stubbe was not sufficiently notified of the time limits concerning invoking the EEO process and was otherwise not aware of them.

90. Dr. Stubbe was unaware and reasonably should not have been aware until after May 8, 2017 that the VA continued to take adverse action against him after his constructive termination. Dr. Stubbe did not know until his receipt of the letter from Mr. Ng dated May 8, 2017 that after his constructive termination, the VA continued its discrimination and reprisals against him by among other things subjecting his patient notes to excessive scrutiny, subjecting his work while at the VA to higher performance standards than had been required of other physicians, and subjecting Dr. Stubbe to threats of being reported to a state licensing board.

91. The actions of the VA have caused Dr. Stubbe severe emotional distress, financial loss, besmirches his excellent reputation as a physician, and jeopardizes his medical license and livelihood. He has also been forced to incur legal expenses, including legal expenses for defending himself before the BORIM.

## Count I
Reprisal for Engaging in Protected Activities

92. The foregoing paragraphs are realleged and incorporated by reference herein.

93. The Defendant's conduct as alleged above constitutes retaliation against Dr. Stubbe because he engaged in activities protected by Title VII , the ADEA and the ADA. The stated reasons for the Defendant's conduct were not the true reasons, but instead were pretext to hide the Defendant's retaliatory animus.

Count II
Age Discrimination

94. The foregoing paragraphs are realleged and incorporated by reference herein.

95. The Defendant's conduct as alleged above constitutes discrimination based on Age Discrimination in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. 621). The stated reasons for the Defendant's conduct were not the true reasons, but instead were pretext to hide the Defendant's discriminatory animus.

Count III
Disability Discrimination

96. The foregoing paragraphs are realleged and incorporated by reference herein.

97. The Defendant's conduct as alleged above constitutes discrimination based on disabilities or perception of disabilities and denial of reasonable accommodation to Dr. Stubbe for his disabilities, in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq., as amended and in violation of the ADA, as amended.

98. The VA has conducted itself intentionally, deliberately, willfully and in callous disregard of the rights of Dr. Stubbe.

99. By reason of the VA's discrimination, Dr. Stubbe is entitled to all remedies available under the Rehabilitation Act.

Count IV
Hostile and Abusive Working Environment

100. The foregoing paragraphs are realleged and incorporated by reference herein.

101. The Defendant's conduct as alleged above constitutes subjecting Dr. Stubbe to a hostile and abusive working environment in violation of Title VII, the Rehabilitation Act and the

ADEA. The stated reasons for the Defendant's conduct were not the true reasons, but instead were pretext to hide the Defendant's discriminatory animus.

## Prayer for Relief

Wherefore, Plaintiff Dr. Ingo Stubbe respectfully requests that the Court enter judgment in his favor and award him relief to make him whole, to include the following:

1. Award plaintiff reasonable compensatory damages, to include damages for lost wages, employment benefits and other compensation or income lost to him; and damages for emotional distress;
2. To the extent allowed by law, award plaintiff damages to compensate him for attorney's fees he incurred in the EEO administrative complaint process and for attorneys' fees he incurred for representation before the Massachusetts Board of Registration in Medicine;
3. Award plaintiff reasonable exemplary or punitive damages;
4. Award plaintiff liquidated damages as provided by law;
5. Award plaintiff reasonable attorney's fees, statutory interest, and the costs of litigation;
6. Issue such other and further relief as this Court deems just.

## PLAINTIFF DEMANDS A JURY TRIAL OF ALL COUNTS

The Plaintiff demands a trial by jury of all issues so triable in this action.

Respectfully submitted

INGO STUBBE, M.D., Ph.D., FACC

By his attorney,

/s/Gale L. Glazer
Gale L. Glazer
MA BBO No. 194660
Font & Glazer
20 Melrose St.
Boston, MA 02116
(617) 451-2300
(617) 451-6196 (fax)
galeglazer@aol.com

*Counsel for Plaintiff*

/s/Gale L. Glazer
Gale L. Glazer

DATED: October 23, 2020