**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| _____ ) | |
| ) | |
| **INGO STUBBE, M.D., PH.D., FACC,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. 20-cv-11915-DJC** |
| ) | |
| **DENIS RICHARD MCDONOUGH,** ) | |
| **SECRETARY OF VETERANS AFFAIRS,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |
| _____ ) | |

**MEMORANDUM AND ORDER**

**CASPER, J.**                                                                    **March 9, 2022**

## I.     Introduction

Plaintiff Dr. Ingo Stubbe ("Stubbe") has filed this lawsuit against Defendant Denis Richard McDonough, Secretary of Veterans Affairs, (the "VA") alleging unlawful retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* (Count I); age discrimination in violation of the ADEA (Count II); disability discrimination in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*, and the ADA (Count III) and claims of a hostile work environment under Title VII, the Rehabilitation Act and the ADEA (Count IV) arising from events during and following Stubbe's employment with the VA.  D. 1.  The VA now moves to dismiss or, in the alternative, for summary judgment.  D. 17.  For the reasons stated below, the Court DENIES the motion in part and ALLOWS it in part.

1

II.     **Standard of Review**

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), the Court must determine if the facts alleged "plausibly narrate a claim for relief."  Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012). Reading the complaint "as a whole," the Court must conduct a two-step, context-specific inquiry. García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013).  First, the Court must perform a close reading of the claim to distinguish the factual allegations from the conclusory legal allegations contained therein.  Id.  Factual allegations must be accepted as true, while conclusory legal conclusions are not entitled credit.  Id.  Second, the Court must determine whether the factual allegations present a "reasonable inference that the defendant is liable for the misconduct alleged." Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011) (citation omitted).  In sum, the complaint must provide sufficient factual allegations for the Court to find the claim "plausible on its face." García-Catalán, 734 F.3d at 103 (citation omitted).

III.    **Factual Background**

Unless otherwise noted, the following facts are alleged in Stubbe's complaint, D. 1, and are assumed to be true for the purpose of deciding this motion.  The Court has also considered certain documents submitted by the VA that are "sufficiently referred to in the complaint."  See Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993); D. 1 ¶¶ 8–9, 62, 76–77; D. 15-1; D. 15-4; D. 15-5; D. 15-14.

A.      <u>**Stubbe's Employment at the VA**</u>

Stubbe is a physician licensed to practice medicine in Massachusetts with several decades of experience in the field of internal medicine.  D. 1 ¶¶ 11, 14.  He initially worked for the VA in Boston as a primary care and internal medicine physician from approximately 1997 to 2000 and subsequently rejoined the VA at its Brockton campus—part of the VA Boston Healthcare

System—on or about February 5, 2007.  Id. ¶¶ 5, 16–17.

From approximately April 21, 2016 to July 7, 2016, Stubbe took a medical leave due to an incident in which he passed out, fell and suffered various physical injuries.  Id. ¶ 26.  Upon his return to work, Stubbe was set to start on a part-time basis but worked many more hours than part time due to the load of work assigned to him.  Id. ¶ 28.  The VA eventually required Stubbe to resume full-time work despite his requesting to extend his part-time schedule.  Id. ¶ 29.

After returning to work, Stubbe walked with visible difficulty, eventually requiring the assistance of a walker or cane.  Id. ¶ 31.  Stubbe submitted a request to his supervisors to reduce his case load as an accommodation for his disabilities.  Id. ¶ 34.  As alleged, the supervisors did not do so and instead assigned Stubbe a heavier patient load and rejected his other requests for accommodations.  Id.  ¶¶ 34, 37, 39.  Stubbe had so many patients that he rarely had time to eat lunch.  Id. ¶ 49.

From July 2016 and continuing increasingly until his departure from the VA in October 2016, Stubbe alleges that his supervisors said to Stubbe words to the effect of "You are getting old.  You should retire."  Id. ¶ 42.  He also contends that one of them also made statements to Stubbe prefaced by phrases such as "Did you forget that" or "Did you remember that."  Id. ¶ 43.

In October 2016, this supervisor allegedly informed Stubbe that the VA could report him to the state licensing board unless he retired, in which case she assured Stubbe that the VA would not pursue any action against him.  Id. ¶ 57.  His supervisor's supervisor also allegedly suggested that Stubbe retire, as other physicians in similar circumstances had done, thereby avoiding the VA pursuing any medical board action against him.  Id. ¶ 58.  Stubbe retired from the VA on October 19, 2016.  Id. ¶ 59.

### B.    Post-Employment Reporting and Administrative Proceedings

On May 8, 2017, Vincent Ng ("Ng"), Medical Center Director for the VA Boston Healthcare System, wrote to Stubbe informing him that he "may have" so significantly failed to meet generally accepted standards of clinical practice with respect to his care of several patients as to raise reasonable concern for the safety of patients, which could require reporting him to the state medical licensing board.  D. 1 ¶ 62; see D. 15-1.  The letter referenced concerns regarding Stubbe's "omitting necessary physical examinations during patient encounters," "inadequate lab monitoring," "care and treatment of [a patient]," "medication error," "prescribing patterns of narcotics and benzodiazepines" and "inaction on abnormal lab results."  See D. 15-1.

On June 21, 2017, Stubbe contacted the VA's Office of Resolution Management ("ORM"), initiating an Equal Employment Opportunity ("EEO") complaint of discrimination, hostile work environment and retaliation.  D. 1 ¶¶ 7, 73.  ORM notified Stubbe of his right to file a formal EEO complaint on or about January 12, 2018.  Id. ¶ 75.  Stubbe filed his formal complaint with ORM on January 24, 2018.  Id. ¶¶ 8, 76; see D. 15-4.  The next day, on January 25, 2018, Ng reported Stubbe to the Massachusetts Board of Registration in Medicine ("BORIM").  D. 1 ¶¶ 72, 77; see D. 15-5.  Stubbe amended his formal complaint on or about March 6, 2018.  D. 1 ¶ 8.  The VA issued a final agency decision on July 21, 2020, rejecting Stubbe's claims.  D. 1 ¶ 9; see D. 15-14.

## IV.    Procedural History

Stubbe commenced this action on October 23, 2020.  D. 1.  The VA now has moved to dismiss or, in the alternative, for summary judgment.  D. 17.  The Court heard the parties on the pending motion and took the matter under advisement.  D. 48.

V.      **Discussion**

A.      <u>**Treating Motion as a Motion to Dismiss**</u>

Because the VA has submitted materials outside the pleadings, the Court may treat its motion as one for summary judgment provided the parties have been "given a reasonable opportunity to present all the material that is pertinent to the motion."  Fed. R. Civ. P. 12(d).  "Whether the parties had an 'opportunity to respond necessarily turns on the way in which the particular case under consideration has unfolded.'"  <u>Rubert-Torres v. Hosp. San Pablo, Inc.</u>, 205 F.3d 472, 475 (1st Cir. 2000) (quoting <u>Whiting v. Maiolini</u>, 921 F.2d 5, 6 (1st Cir. 1990)).  The First Circuit has "disfavored conversion when (1) the motion comes quickly after the complaint was filed, (2) discovery is in its infancy and the nonmovant is limited in obtaining and submitting evidence to counter the motion, or (3) the nonmovant does not have reasonable notice that a conversion might occur."  <u>Id.</u>

Here, the VA filed its motion just seven months after Stubbe filed his complaint and before any discovery in this matter.  <u>See</u> D. 1; D. 17.  This case, therefore, remains in its infancy such that the first two factors above weigh against conversion.  <u>See</u> <u>Rubert-Torres</u>, 205 F.3d at 475; <u>see also</u> <u>Foley v. Wells Fargo Bank, N.A.</u>, 772 F.3d 63, 73 (1st Cir. 2014) (concluding that conversion from Rule 12 motion to Rule 56 motion was inappropriate where "discovery ha[d] not 'begun and the nonmovant . . . had no reasonable opportunity to obtain and submit additional evidentiary materials to counter the movant's [evidence]'" (second alteration in original) (quoting <u>Whiting</u>, 921 F.2d at 7)).  Thus, although Stubbe had some notice that conversion might occur, <u>see</u> D. 17 (moving for summary judgment in the alternative), the Court treats this motion as a motion under Rule 12(b)(6).

**B.      Timely Exhaustion of Administrative Remedies (Counts II, III and IV)**

The VA argues that Stubbe failed to exhaust his administrative remedies for his discrimination, reasonable accommodation, constructive discharge and hostile work environment claims in a timely manner.  D. 18 at 6–10.  Stubbe responds that equitable principles should apply here, extending the time limit within which he needed to contact an EEO officer.  D. 34 at 3–9.

A federal employee who brings an action under Title VII or the Rehabilitation Act must have exhausted his administrative remedies.  Bartlett v. Dep't of the Treasury, 749 F.3d 1, 7–8 (1st Cir. 2014); Jorge v. Rumsfeld, 404 F.3d 556, 564 (1st Cir. 2005).  The same applies to claims brought under the ADEA where the plaintiff elects first to pursue an administrative remedy rather than proceed directly to court.  Maziarz v. Brennan, No. 15-cv-30098-MAP, 2016 WL 7799647, at *3–4 (D. Mass. Aug. 3, 2016), report and recommendation adopted, No. 15-cv-30098-MAP, 2016 WL 5334463 (D. Mass. Sept. 22, 2016) (citing Jorge, 404 F.3d at 561).  To exhaust his administrative remedies, an employee must contact an EEO officer within forty-five days of the alleged discriminatory act.  Velazquez-Rivera v. Danzig, 234 F.3d 790, 794 (1st Cir. 2000); see 29 C.F.R. § 1614.105(a)(1).

"This exhaustion requirement is no small matter; it 'is a condition to the waiver of sovereign immunity' and thus 'must be strictly construed.'"  Vázquez-Rivera v. Figueroa, 759 F.3d 44, 47–48 (1st Cir. 2014) (quoting Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 94 (1990)).  The forty-five-day time limit is, however, "not a jurisdictional prerequisite and, as such, is subject to equitable tolling, waiver and estoppel."  Kelly v. United States Dep't of Homeland Sec., 4 F. Supp. 3d 358, 361 (D.R.I. 2014) (citing Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982) and McKinnon v. Kwong Wah Restaurant, 83 F.3d 498, 504 (1st Cir. 1996)); see 29 C.F.R. § 1614.105(a)(2) (providing that the forty-five-day limit shall extend when the plaintiff "shows

6

that he or she was not notified of the time limits and was not otherwise aware of them," among other reasons).  Courts take a "narrow view" of the equitable exceptions to the administrative exhaustion requirement.  Vera v. McHugh, 622 F.3d 17, 30 (1st Cir. 2010) (citation omitted) (stating that courts should apply these doctrines "sparingly").

There is no dispute that Stubbe did not contact an EEO officer within forty-five days of any act relating to his claims for discrimination, reasonable accommodation, constructive discharge or hostile work environment:  even as alleged, any such act occurred, at the latest, in October 2016, the time of Stubbe's departure from the VA, and Stubbe did not initiate the EEO process until June 21, 2017, more than forty-five days later.  See D. 1 ¶¶ 7, 59, 73.  The issue, therefore, is whether the forty-five-day time limit should be extended under equitable principles.

"Courts have recognized two alternate, though related, doctrines" for extending such time limits:  equitable tolling and equitable estoppel.  Kale v. Combined Ins. Co. of Am., 861 F.2d 746, 752 (1st Cir. 1988).  "Equitable tolling is appropriate when the plaintiff demonstrates 'excusable ignorance' of his statutory rights."  Am. Airlines, Inc. v. Cardoza-Rodriguez, 133 F.3d 111, 124 (1st Cir. 1998) (quoting Kale, 861 F.2d at 752).  "[W]here such ignorance is caused either by misconduct of an employer or by failure of that employer to conspicuously post the [required] informational EEOC notices . . . there may be a valid claim for equitable tolling—at least until the employee receives actual notice of his statutory rights or retains an attorney."  Kale, 861 F.2d at 752.  Accordingly, a plaintiff with actual or constructive knowledge of his rights may not have the time limit equitably tolled.  Bartlett, 749 F.3d at 10–11 (citing Kale, 861 F.2d at 753).  "Actual knowledge occurs where an employee either learns or is told of his . . . rights, even if he becomes only generally aware of the fact that there is a statute outlawing age discrimination and providing relief therefor."  Kale, 861 F.2d at 753.  "Constructive knowledge, on the other hand, is 'attributed'

to an employee in situations where he has retained an attorney, or where an employer has fulfilled

his statutory duty by conspicuously posting the official EEOC notices that are designed to inform

employees of their . . . rights." Id. (internal citations omitted).  The doctrine of equitable estoppel

applies "when an employee is aware of his . . . rights, but does not make a timely filing due to his

reasonable reliance on his employer's deceptive conduct." Am. Airlines, 133 F.3d at 124.

### 1.   Equitable Tolling

Stubbe's allegations, at least implicitly, invoke equitable tolling here.  See D. 1 ¶ 89

(alleging that Stubbe "was not sufficiently notified of the time limits concerning invoking the EEO

process and was otherwise not aware of them").  The Court notes the declaration of Edwin Muller,

the VA's "EEO Manager" in Boston, which the VA has submitted and relied upon in arguing that

Stubbe had actual or constructive knowledge of his rights based upon EEO-related postings and

EEO-related trainings.  See D. 15-6; D. 16 ¶ 14; D. 18 at 8–9.  As the Court is treating the present

motion as a motion to dismiss, however, it would be premature to decide the issue of equitable

tolling on the current incomplete record comprised primarily of materials beyond the pleadings.

Further, there appears to be a factual dispute as to the VA's compliance with the requirements for

EEO-related postings and Stubbe's notice of same, as well as whether the VA provided Stubbe

with EEO-related training.  See, e.g., D. 34 at 7 (arguing that the VA failed to show that it posted

the requisite materials "throughout the workplace" as required by law); D. 35-1 at 1 ¶ 4 (stating

that Stubbe's heavy patient load meant he had no time to eat in the cafeteria or review the bulletin

board in that area), 2 ¶ 11 (asserting that Stubbe "do[es] not recall having been provided" with

EEO-related training).  Accordingly, the Court denies the VA's motion to dismiss Counts II, III

and IV.

###### 2.    *Equitable Estoppel*

Stubbe also appears to invoke the doctrine of equitable estoppel.  He argues that the VA misled him into believing that it would not report him to the state licensing board if he immediately retired, which induced him to retire in October 2016 and refrain from timely initiating the EEO process.  D. 34 at 7–8; see D. 1 ¶¶ 57–59.

Even assuming the VA misrepresented its intentions to report Stubbe to the state licensing board, Stubbe has not alleged that he relied upon that misrepresentation in refraining from contacting an EEO officer in a timely manner.  See Am. Airlines, 133 F.3d at 124.  While Stubbe alleges that the VA's alleged misrepresentations induced his early retirement, Stubbe fails to allege that he relied upon such misrepresentations in not contacting an EEO officer within forty-five days of any discriminatory or retaliatory conduct occurring prior to his departure from the VA in October 2016.  See Hickey v. Brennan, 969 F.3d 1113, 1120 (10th Cir. 2020) (explaining that the misleading information must relate to employee's ability to pursue EEO counseling); Johnson v. Henderson, 314 F.3d 409, 416 (9th Cir. 2002) (rejecting application of equitable estoppel where "nothing the supervisor allegedly said to [the plaintiff] . . . bore on the applicability of the deadline for the requirement to seek informal counseling").  Accordingly, Stubbe has not plausibly alleged entitlement to equitable estoppel.

For all these reasons, the Court DENIES the VA's motion to dismiss Counts II, III and IV based upon Stubbe's failure timely to exhaust his administrative remedies.  In connection to the initial scheduling conference, the Court will consider whether any proposal regarding phasing discovery on the issue of equitable tolling ahead of merits discovery may be appropriate here.

C.      **Retaliation Claim (Count I)**

Stubbe alleges that the VA unlawfully retaliated against him for engaging in activities protected by Title VII, the ADA and the ADEA.  See D. 1 ¶¶ 92–93.  Retaliation cases lacking direct evidence of animus follow the McDonnell Douglas burden-shifting framework, which requires the plaintiff to make a *prima facie* showing of retaliation.  See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–04 (1973); Carreras v. Sajo, Garcia & Partners, 596 F.3d 25, 35–36 (1st Cir. 2010); Mesnick v. Gen. Elec. Co., 950 F.2d 816, 827 (1st Cir. 1991).  To establish a *prima facie* case of retaliation, the plaintiff must show that (1) he engaged in protected conduct, (2) he suffered an adverse employment action and (3) a causal connection existed between the protected conduct and the adverse action.  Noviello v. City of Boston, 398 F.3d 76, 88 (1st Cir. 2005); Soileau v. Guilford of Maine, Inc., 105 F.3d 12, 16 (1st Cir. 1997) (explaining that Title VII analysis applies to ADA retaliation claims); Mesnick, 950 F.2d at 827.  Protected conduct includes opposing an employer's unlawful discriminatory conduct or participating in an investigation, proceeding or hearing brought under Title VII, the ADA or the ADEA.  See 42 U.S.C. § 2000e-3(a); 42 U.S.C. § 12203(a); 29 U.S.C. § 623(d).  "To be adverse, an action must materially change the conditions of plaintiffs' employ."  Gu v. Boston Police Dep't, 312 F.3d 6, 14 (1st Cir. 2002).  "[T]he employee's burden to establish a *prima facie* case in the retaliation context 'is not an onerous one.'"  Dennis v. Osram Sylvania, Inc., 549 F.3d 851, 858 (1st Cir. 2008) (quoting Calero-Cerezo v. United States Dep't of Justice, 355 F.3d 6, 26 (1st Cir. 2004)).  Further, a plaintiff may assert a claim for retaliation even if the underlying discrimination claim fails.  See Mesnick, 950 F.2d at 827 (explaining that "[t]he fact that a plaintiff eventually proves unable to establish [a statutory violation] in the first instance is not fatal to his *prima facie* case of retaliation").

Stubbe's retaliation claim centers on three protected activities:  his requests for reasonable accommodation prior to October 2016, his informal participation in the EEO process from June 2017 to January 2018 and his filing a formal EEO complaint in January 2018.  See D. 34 at 10–15.  Further, he claims that the VA retaliated against him by subjecting him to a hostile work environment, deciding to evaluate his treatment records in 2017 and reporting him to the BORIM in January 2018.  Id.

The VA argues that Stubbe cannot make a *prima facie* showing of causation for several reasons.  The VA contends that, to the extent Stubbe relies upon his requests for reasonable accommodation as protected activity, he has not alleged that Ng or anyone involved in the evaluation of his treatment records in 2017 knew about those accommodation requests.  D. 18 at 12.  The VA further asserts that Stubbe is unable to link the accommodation requests made in summer or early fall of 2016 to the decision in May 2017 to evaluate the care he provided.  Id.

*1.    Retaliation Based upon Requests for Reasonable Accommodation*

The VA correctly notes Stubbe's failure to allege that Ng or anyone involved in the decision in May 2017 to evaluate his treatment records knew about his requests for reasonable accommodation.  See generally D. 1.  Moreover, Stubbe's alleged accommodation requests in summer or early fall of 2016 are too remote to support an inference of causation with respect to that decision.  See Ahern v. Shinseki, 629 F.3d 49, 58 (1st Cir. 2010) (stating that "[w]ithout some corroborating evidence suggestive of causation . . . a gap of several months cannot alone ground an inference of a causal connection between a complaint and an allegedly retaliatory action"); Morón-Barradas v. Dep't of Educ. of Commonwealth of P.R., 488 F.3d 472, 481 (1st Cir. 2007) (describing eight-month gap between protected activity and adverse action as "insufficient to establish temporal proximity").

11

Stubbe, however, also alleges that his supervisors subjected him to a hostile work environment from July 2016 to October 2016 as retaliation for his requests for reasonable accommodation. See, e.g., D. 1 ¶¶ 34, 37, 39–40, 48, 55; D. 34 at 12–13 (explaining that Stubbe's "allegations of retaliation also pertain to [his] being subjected to a hostile, harassing work environment beginning on or about July 7, 2016 when he returned from medical leave until the date of his retirement on October 19, 2016").

"Requesting an accommodation is protected conduct for purposes of the ADA's retaliation provision." Freadman v. Metro. Prop. & Cas. Ins. Co., 484 F.3d 91, 106 (1st Cir. 2007).[1] Further, "a hostile work environment, tolerated by the employer, is cognizable as a retaliatory adverse employment action." Noviello, 398 F.3d at 89. To "prove a hostile work environment, a plaintiff must show that she was subjected to severe or pervasive harassment that materially altered the conditions of [his] employment." Noviello, 398 F.3d at 92 (citing Faragher v. City of Boca Raton, 524 U.S. 775, 786 (1998)). "The harassment must be 'objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so.'" Id. (quoting Faragher, 524 U.S. 787). "In determining whether a reasonable person would find particular conduct hostile or abusive, a court must mull the totality of the circumstances, including factors such as the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it

---

[1] The Court considers Stubbe's claim only under the ADA. Stubbe's Title VII claim fails because he has not alleged any discriminatory act based upon his race, color, religion, sex or national origin. See 42 U.S.C. § 2000e-2 (protecting such classes); Montanez v. Educ. Tech. Coll., 660 F. Supp. 2d 235, 243 (D.P.R. 2009) (granting summary judgment to defendant on Title VII claim because plaintiff "failed to allege any discriminatory act based upon the classes protected under Title VII"). Further, his ADEA claim fails because he does not allege any conduct protected under that act. See Johnson v. ExxonMobil Corp., 426 F.3d 887, 893 (7th Cir. 2005), as amended (Nov. 21, 2005) (explaining that "the ADEA does not allow for 'reasonable accommodation'").

unreasonably interferes with an employee's work performance.'" Id. (quoting Faragher, 524 U.S. 787–88) (further citation omitted) (noting that "[t]he thrust of this inquiry is to distinguish between the ordinary, if occasionally unpleasant, vicissitudes of the workplace and actual harassment"). "Along this continuum, rudeness or ostracism, standing alone, usually is not enough to support a hostile work environment claim." Id. Evaluating a hostile work environment claim is a fact-intensive inquiry "often reserved for a fact finder, but summary judgment is an appropriate vehicle for polic[ing] the baseline" for such claims. See Pomales v. Celulares Telefónica, Inc., 447 F.3d 79, 83 (1st Cir. 2006) (alteration in original) (internal citations and quotation marks omitted).

Stubbe has, at minimum, plausibly alleged that he was assigned an excessive workload from July 2016 to October 2016 as retaliation for his requests for reasonable accommodation. "[T]he assignment of 'an excessive workload' as a result of 'discriminatory intent' can be an adverse employment action because it is 'more disruptive than a mere inconvenience or an alteration of job responsibilities.'" Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 88 (2d Cir. 2015) (internal citations omitted) (quoting Feingold v. New York, 366 F.3d 138, 153 (2d Cir. 2004) and Terry v. Ashcroft, 336 F.3d 128, 138 (2d Cir. 2003)); see Knight v. O'Reilly Auto Enters., LLC, No. 2:17-CV-300-NT, 2019 WL 1302545, at *10 (D. Me. Mar. 21, 2019) (citing cases, including Feingold, where excessive or disproportionate workload constituted adverse employment action).

Stubbe alleges that his supervisors assigned him a heavier patient load after he requested a reduced case load as an accommodation for his disabilities. D. 1 ¶ 34. He further alleges that he was assigned the largest number of chronic opiate patients of any physician at the Brockton campus, including compared to non-disabled physicians. Id. ¶¶ 25, 48. Stubbe allegedly often worked extra hours in mornings and nights and on weekends to complete patient notes and rarely

had time to eat lunch.  Id. ¶ 49.  After he left the VA, Verma allegedly spread Stubbe's patients

out to other doctors and said no single person could handle so many pain patients.  Id. ¶ 54.  Viewed

in the light most favorable to Stubbe, these factual allegations suggest something "more disruptive

than a mere inconvenience or an alteration of job responsibilities," see Vega, 801 F.3d at 88

(citations and internal quotation marks omitted), which "materially change[d] the conditions of

[Stubbe's] employ," see Gu, 312 F.3d at 14.  Such satisfies the *prima facie* requirement that the

plaintiff suffered an adverse employment action, see Noviello, 398 F.3d at 88, regardless of

whether it satisfies the specific requirements for a hostile work environment, see id. at 92.

Moreover, the VA does not argue that Stubbe fails to link his requests for reasonable

accommodation to his supervisors' allegedly discriminatory conduct.  See generally D. 18; D. 40.

Thus, to the extent that Stubbe's claim of retaliation is based upon his being subjected to an

excessive workload from July 2016 to October 2016 due to his requests for reasonable

accommodation under the ADA, it survives the VA's motion.

2.    *Retaliation Based upon EEO Activity*

With respect to Stubbe's EEO activity between June 2017 and January 2018, the VA argues

that its decision in May 2017 to evaluate his care predated that activity and, therefore, cannot

constitute retaliation for such protected conduct.  D. 18 at 12–13.  The VA also contends that no

one involved in the decision to report Stubbe to the BORIM knew about his EEO activity.  Id.  at

13.  Finally, the VA argues that, although it reported Stubbe to the BORIM one day after he filed

his formal EEO complaint, Stubbe cannot establish causation as the VA had already contemplated

reporting him prior to his filing the complaint.  Id.

 "Absent special circumstances . . ., an adverse employment decision that predates a

protected activity cannot be caused by that activity."  Muñoz v. Sociedad Española De Auxilio

14

Mutuo y Beneficiencia De P.R., 671 F.3d 49, 56 (1st Cir. 2012).  "This is also true . . . when the adverse employment decision was contemplated but 'not yet definitively determined' before the protected activity took place."  Id. (quoting Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 272 (2001) (stating that an employer "proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality")).

Even as alleged, the decision in May 2017 to evaluate the care Stubbe provided predated his EEO activity between June 2017 and January 2018.  See D. 1 ¶¶ 62, 73–76.  Such, therefore, cannot support an inference of retaliatory causation.  See Muñoz, 671 F.3d at 56.  Stubbe contends, however, that Ng's January 2018 letter reporting him to the BORIM was retaliatory.  D. 34 at 10–11.  Nevertheless, even as alleged, the VA had already contemplated reporting Stubbe prior to his filing a formal EEO complaint, so Stubbe also cannot establish causation with respect to his filing of the complaint and Ng's letter to the BORIM.  See D. 1 ¶¶ 62, 76–77; Muñoz, 671 F.3d at 56.

While Muñoz left open the possibility for "special circumstances" to justify finding that an adverse employment decision contemplated prior to protected conduct could support causality, see Muñoz, 671 F.3d at 56, no such circumstances are alleged here.  Stubbe argues that the temporal proximity of his filing the formal EEO complaint and Ng reporting him to the BORIM establishes causation.  D. 34 at 10–11.  Muñoz itself, however, involved a plaintiff giving a "heated deposition in a lawsuit about the [employer] hospital's alleged discrimination" against him and the employer terminating him the next day.  Muñoz, 671 F.3d at 52, 56.  The First Circuit held that the plaintiff's termination could not support an inference of causality because the decision to terminate him occurred three weeks prior.  Id. at 56 (stating that the plaintiff's termination "turned out to be incredibly poor timing" but was "not evidence of retaliation").  Here, as alleged, the VA had "previously contemplated" its decision to report Stubbe to the BORIM months before Stubbe filed

his formal EEO complaint.  See Breeden, 532 U.S. at 272; D. 1 ¶ 62.  Moreover, Stubbe has not

alleged that the responsible decisionmakers—particularly Ng, who sent the letter to the BORIM—

knew about Stubbe filing the complaint.  See generally D. 1.  Thus, even viewing the facts in the

light most favorable to Stubbe, there exists no basis to conclude that "special circumstances"

support deviating from the general rule stated in Muñoz, 671 F.3d at 56.

Accordingly, Stubbe's claim of retaliation, Count I, survives the VA's motion to dismiss

only to the extent he bases it upon being subjected to an excessive workload in the period of July

2016 to October 2016 due to his requests for reasonable accommodation under the ADA.  The

Court, therefore, DENIES in part and ALLOWS in part the VA's motion to dismiss Count I.

## VI.    Conclusion

For the foregoing reasons, the Court DENIES the VA's motion to dismiss in part and

ALLOWS it in part, D. 17.  The Court denies the VA's motion to dismiss Counts II, III and IV

and will consider phased discovery on the issue of equitable tolling.  The Court allows in part and

denies in part the VA's motion to dismiss Count I:  to the extent that Stubbe's claim of retaliation

is based upon his being subjected to an excessive workload from July 2016 to October 2016 due

to his requests for reasonable accommodation under the ADA, that portion of Count I survives.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge

16